### In re MORRIS METAL PRODUCTS CORPORATION.

### Petition of McNEIL.*

(Circuit Court of Appeals. Second Circuit. December 2, 1924.)

### No. 92.

1. Stipulations ⟺1—"Stipulation" defined.

A "stipulation" is an agreement between counsel respecting business before the court.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Stipulate—Stipulation.]

2. Stipulations ⟺1—Failure to either agree or disagree with statement held not stipulation as to amount of lien claims.

Claimant's counsel, who did not agree or disagree with statements of trustee and trustee's attorney at meeting of creditors that certain lien claims controlled or owned by such claimant would not exceed specified amount, and who later suggested that all claimants file statements on following day, and did in fact file claim for amount in excess of that so stated, did not stipulate that amount of such lien claims was not in excess of amount so stated by trustee and his attorney.

3. Bankruptcy ⟺250(1)—Trustee held estopped by written agreement with claimant to deny amount of claimant's liens.

Trustee, who agreed with claimant for deposit in escrow of quitclaim deed from claimant for delivery on sale by trustee of bank-

*Certiorari denied 45 S. Ct. 355, 69 L. Ed. —.

rupt's real estate for sum sufficient to pay off liens, including claimant's liens, for specified amount, was estopped to deny amount of such liens, in absence of fraud on claimant's part in obtaining agreement.

Petition to Revise Order of the District Court of the United States for the District of Connecticut.

In the matter of the Morris Metal Products Corporation, bankrupt. On petition of Kenneth W. McNeil to revise an order of the District Court construing certain writings. Order reversed.

Jonathan Grout and Boardman & Grout, all of Bridgeport, Conn., for petitioner.

W. Parker Seeley and Pullman & Comley, all of Bridgeport, Conn., for Reich, trustee-respondent.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge. This petition relates to the construction of certain writings. If the court below rightly construed these papers, the order complained of is correct; petitioner urges that they have been misunderstood.

The bankrupt owned real estate of very considerable value in the city of Bridgeport. There were many incumbrances, i. e., taxes, judgments, and a corporate mortgage, the bonds issued under which had not been sold to the public but used as collateral for loans or advances to the corporation.

It was thought desirable that the trustee should sell this land, etc., free and clear of liens, and to facilitate such a sale the various lien creditors, or most of them, were assembled before the referee in charge.

The object of the meeting was to find out as nearly as possible what the demands of the various lienholders would severally and in the aggregate amount to. This procedure obviously cast some light on the advisability of selling by the trustee, rather than leaving lienors to enforce their liens as best they could.

The remarks of counsel at this meeting, held July 11, 1922, were stenographically reported, and from the report it is clear that the trustee and his attorney both expressed the belief that certain lien claims controlled, if not owned, by one McNeil, would not exceed $85,000. McNeil's counsel was present, and neither agreed nor disagreed with the statements aforesaid; there was another lienholder represented who was "not prepared to stipulate exactly," whereupon McNeil's

attorney suggested that all "file statements to-morrow, each setting forth what his claim is," and this was agreed to.

The day following, McNeil did file a claim, particularizing his own personal claim at a figure which, when added to the demands controlled or purchased by him, brought the aggregate of his demand to a sum greater by $2,847.10 than the $85,000 stated by trustee at the meeting of July 11th.

On the 22d of July and before any sale, McNeil and the trustee made a written agreement, whereby the latter deposited in escrow a quitclaim deed, to be delivered upon the trustee's making a sale for a sum sufficient to pay off "all liens up to and including" a certain described incumbrance. This description covered all McNeil's liens, and especially his own personal demand, which is described or recited in this agreement of July 22, at exactly the sum for which McNeil had filed claim on July 12.

The sale was had, a sum sufficient to cover McNeil's liens was realized, and McNeil's deed was evidently used. Then followed proceedings for the distribution of the net sale price, and the trustee contended that McNeil had stipulated or agreed that he would take $85,000 for all the liens owned or controlled by him, and the court below so held; thereupon McNeil filed this petition.

[1, 2] We cannot agree with this ruling. A "stipulation" is an agreement between counsel respecting business before the court (36 Cyc. 1280).; undoubtedly one business before the court (inter alia) on July 11, 1922, was how much McNeil's liens amounted to, but his counsel never stipulated or agreed that they amounted to any fixed sum.

The trustee said what he thought they amounted to. But it takes two to make a bargain or a stipulation; indeed, it often takes three to make the latter—the court is the third.

[3] Again, it was in the face of the trustee's bargain of July 22, 1922, for McNeil's quitclaim deed, for the trustee to object to a demand, stated in the said agreement, and a material part of the consideration therefor. No fraud is shown or suggested on McNeil's part in obtaining this agreement; therefore the trustee was estopped to go behind it.

Holding that the talk of July 11th was a stipulation or agreement was error of law; so was permitting the trustee to escape from the necessary implication of his own contract of July 22d.

Order reversed, with costs.